UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| JULIANA MILENA OJEDA MONTOYA,<br><br>        Plaintiff,<br><br>v.<br><br>KEVIN JOYCE,<br>*Sheriff, Cumberland County Sheriffs Office*, et al.,<br><br>        Respondents. | 2:25-cv-00558-SDN |

**ORDER GRANTING RELEASE**

This issue is before the Court pursuant to Petitioner Juliana Milena Ojeda Montoya's verified petition for a writ of habeas corpus. ECF No. 6-1.[1] For the reasons that follow, the Court releases Ms. Ojeda Montoya pending further briefing.

### I.   Facts[2]

On February 22, 2023, Ms. Ojeda Montoya entered the country uninspected at or near Lukeville, Arizona. ECF No. 1-1 at 1 (Notice to Appear). Within one day of her entrance into the country, Petitioner was apprehended by the U.S. Department of Homeland Security ("DHS") among a group of thirty-seven other individuals. ECF No. 8-1 at 3. At that time, she conceded that she did not have the requisite legal documents to enter or pass through the country, *id.*, so DHS placed her into removal proceedings and

---

[1] Ms. Ojeda Montoya originally filed a verified petition on November 7, 2025. ECF No. 1. The next day, she filed a notice of errata correcting one sentence in the original petition. ECF No. 6. The Court thus construes the amended verified petition attached to the notice of errata as the operative filing in this matter. ECF No. 6-1.

[2] These facts are derived from Ms. Ojeda Montoya's amended verified petition, the parties' filings and exhibits, and counsels' presentations at the November 10, 2025, oral argument.

1

detained her pursuant to section 236 of the Immigration and Nationality Act ("INA"), ECF No. 8-3 at 1 (I-200 Warrant for Arrest); *see also* ECF No. 1-2 at 1 (Notice of Custody Determination). The box checked on her Notice to Appear demarcated her as "a[] [noncitizen] present in the United States who has not been admitted or paroled." ECF No. 1-1 at 1.

On March 6, 2023, the Immigration Court held a bond hearing and Petitioner was released on $1,500 bond. ECF No. 1-3 at 1. Since that date, she has resided in Fitchburg, Massachusetts, with her husband and one-and-a-half-year-old daughter, whom she currently is breastfeeding. ECF No. 6-1 at 2–3; ECF No. 13 at 1. She remains in removal proceedings, for which an individual hearing is scheduled for February 6, 2029, and is pursuing an asylum claim. ECF No. 6-1 at 2–3. On July 30, 2024, U.S. Citizenship and Immigration Services issued her a workplace authorization document, which expires in 2029. ECF No. 1-5 at 1. She currently is employed at Burger King. ECF No. 6-1 at 3.

On August 1, 2025, a criminal complaint issued against Ms. Ojeda Montoya alleging that she violated Massachusetts law by cutting a woman with scissors and throwing a trashcan at her. ECF No. 8-4 at 5. In her amended verified petition, Petitioner asserts that she was charged with assault and battery with a dangerous weapon and assault with a dangerous weapon pursuant to Mass. Gen. Laws ch. 265, §§ 15A(b) and 15B(b) (2025). ECF Nos. 6-1 at 3, 8-4 at 2. She was arraigned on August 4, 2025, in Leominster, Massachusetts, District Court and was ordered released on her own recognizance. ECF No. 6-1 at 3.

On November 6, 2025, Ms. Ojeda Montoya's husband was driving her to work with their young daughter in the car. *Id.* U.S. Immigration and Customs Enforcement ("ICE") officers pulled the car over in an effort to detain Petitioner. *Id.* In an ensuing altercation,

2

a bystander filmed Ms. Ojeda Montoya's husband allegedly having a seizure during ICE agents' arrest of Ms. Ojeda Montoya and while his young daughter was in his arms.[3] *Id.* at 4. Ms. Ojeda Montoya was detained and transported to Cumberland County Jail in Portland, Maine, where she remains in ICE custody.[4] *Id.*

On November 7, 2025, Ms. Ojeda Montoya filed the instant habeas petition pursuant to 28 U.S.C. § 2241, alleging, among other things, that she is discretionarily detained under 8 U.S.C. § 1226(a) and, as such, is entitled to a bond hearing before any re-detention. ECF No. 1; ECF No. 6-1 (Amended Verified Petition). On November 8, 2025, I issued an order requiring the Government to show cause as to why Ms. Ojeda Montoya's detention was lawful, ECF No. 5, to which the Government responded on November 9, 2025, ECF No. 8. On November 10, 2025, the Court held oral argument on the habeas petition. ECF No. 10. At the argument, I directed the parties to address whether the Laken Riley Act applies to the Petitioner's case due to her state criminal charges. *See* 8 U.S.C. § 1226(c)(1)(E)(ii). The Laken Riley Act mandates detention for noncitizens who have been charged with, convicted of, or admit to committing certain enumerated criminal acts. *See id.* ("The Attorney General shall take into custody any [noncitizen] who . . . is charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of . . . any crime that results in death or serious bodily injury to another person."). As discussed further below, Petitioner's counsel asserts the Laken Riley Act does not apply to Petitioner; the

---

[3] *See* Marina Dunbar, *ICE Facing Fierce Backlash After Video Apparently Shows Unconscious Man Clutching Child During Arrest*, THE GUARDIAN (Nov. 7, 2025), https://www.theguardian.com/us-news/2025/nov/07/ice-video-unconscious-man-child-arrest.

[4] Because Ms. Ojeda Montoya currently is detained in Maine, I find that this Court retains jurisdiction over the habeas matter. *See Ozturk v. Trump*, 777 F. Supp. 3d 26, 35 (D. Mass. 2025) ("[A]s a general matter, a habeas petitioner must file his or her petition in the district of confinement.").

Government maintains that Petitioner is appropriately detained pursuant to 8 U.S.C. § 1225(b)(2)—despite this Court's repeated rulings to the contrary—and, alternatively, because of the Laken Riley Act. Petitioner's counsel urges the Court to release Ms. Ojeda Montoya while the parties brief the Laken Riley Act's application to Ms. Ojeda Montoya's case.

## II.   Discussion

"[A] district court entertaining a petition for habeas corpus has inherent power to release the petitioner pending determination of the merits." *Woodcock v. Donnelly*, 470 F.2d 93, 94 (1st Cir. 1972) (per curiam). In the First Circuit, a petitioner is entitled to a bail hearing "if [s]he demonstrates a 'substantial claim of constitutional error,' and that 'extraordinary circumstances exist that make the grant of bail necessary to make the habeas remedy effective.'" *Gomes v. U.S. Dep't of Homeland Sec., Acting Sec'y*, 460 F. Supp. 3d 132, 144 (D.N.H. 2020) (quoting *Mapp v. Reno*, 241 F.3d 221, 226 (2d Cir. 2001)). A petitioner can secure bail if: "(1) the petitioner has a clear case on the law and facts, or (2) exceptional circumstances are present and the petitioner demonstrates a substantial claim of constitutional error." *Id*.

### A. Substantial Claim

There is a dearth of controlling caselaw on what constitutes a "substantial" claim of constitutional error, and what a party might have to show with respect to a claim. *See, e.g.*, *Glynn v. Donnelly*, 470 F.2d 95, 98 (1st Cir. 1972) (stating bail should not be ordered without "a clear case" on both the law and the facts and that "[m]erely to find that there is a substantial question is far from enough"); *Woodcock*, 470 F.3d at 94 (indicating a finding of "likelihood of [their] success on the merits" may be necessary). Under *Mapp*, which other courts in this Circuit have affirmatively cited, *see Gomes*, 460 F. Supp. 3d at

4

136 (citing *Mapp*); *Jimenez v. FCI Berlin, Warden*, No. 25-CV-326, 2025 WL 2639390, at *1 (D.N.H. Sept. 8, 2025) (same), contesting a deportation order that is "open to question" is sufficient to establish a substantial claim, *Mapp*, 241 F.3d at 230.

The Court concludes that Petitioner has sufficiently presented at least one substantial claim here: her contention that her current detention without an opportunity to be heard violates her rights to due process. *See* ECF No. 6-1 at 8–10; *Chogllo Chafla v. Scott*, No. 2:25-CV-00437, 2025 WL 2688541, at *5–9 (D. Me. Sept. 22, 2025). It is unclear at this juncture whether this Court can make an initial determination on the applicability of the Laken Riley Act, whether Ms. Ojeda Montoya is entitled to a *Joseph* hearing[5] before the Immigration Court to contest the applicability of the Laken Riley Act, whether she is entitled to a bond re-determination hearing, or some combination thereof. The outstanding question of which statute governs her detention—and thus, the extent to which her due process rights have been infringed, if at all—is a complicated question that requires detailed analysis of the facts, statutes, and relevant state and federal caselaw. By virtue of the expedited nature of this emergency habeas petition and the fast-developing caselaw on this issue, the Court needs further briefing to assess the underlying merits of the due process claim.

The crux of Ms. Ojeda Montoya's claim is that she is entitled to a bond hearing because she is discretionarily detained under 8 U.S.C. § 1226(a) and thus is entitled to an opportunity to be heard before any re-detention. *See* ECF No. 6-1 at 4–5; *Hernandez-Lara v. Lyons*, 10 F.4th 19, 41 (1st Cir. 2021) (establishing procedural protections for bond

---

[5] "A *Joseph* hearing permits release from detention if the detainee can demonstrate that the underlying bases for invoking § 1226(c), *e.g.*, conviction of deportable offense, did not apply to [her]." *M.P.L. v. Arteta*, No. 25-CV-5307, 2025 WL 2938993, at *4 (S.D.N.Y. Oct. 16, 2025).

re-determination hearings under section 1226(a)). Her claim is bolstered by the fact that Respondents originally classified her as subject to section 1226(a) when Respondents released her on $1,500 bond after her March 2023 bond hearing. *See* ECF No. 1-3 at 1; *Ramirez Clavijo v. Kaiser*, No. 25-CV-06248, 2025 WL 2419263, at *4 (N.D. Cal. Aug. 21, 2025) (finding that once immigration authorities "elect[] to proceed with full removal proceedings under § 1226, [they] cannot [] reverse course and institute § 1225 expedited removal proceedings"). The Government avers that she is subject to mandatory detention under the Laken Riley Act, ECF No. 8 at 11, and, in the alternative, that she must be mandatorily detained as an "arriving [noncitizen]" under 8 U.S.C. § 1225(b)(2), ECF No. 8 at 16. The Court cannot resolve which statutory provision applies to Petitioner's detention at this time. As this Court repeatedly has made clear in other matters, if indeed Ms. Ojeda Montoya is subject to discretionary detention under section 1226(a), then her continued detention would be unlawful. *See Chogllo Chafla*, 2025 WL 2688541, at *5–9; *see also id*. at *5 (collecting cases holding the same). Thus, the Court concludes that Ms. Ojeda Montoya has made the requisite showing that her due process claims establish the potential for a "substantial" claim of constitutional error at this stage.

### B. Extraordinary Circumstances

As an initial matter, the Court must reiterate that "'[i]n our society liberty is the norm,' and detention without trial 'is the carefully limited exception.'" *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004) (quoting *United States v. Salerno*, 481 U.S. 739, 755 (1987)). That prescription applies in equal force to those detained pursuant to criminal charges and to noncitizens in immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 696 (2001). Nor can detention in this context be used punitively, but rather only to prevent flight and mitigate potential danger to the community. *See id*. at 690 ("The

[immigration] proceedings at issue here are civil, not criminal, and we assume that they are nonpunitive in purpose and effect.").

Although the Court does not dispute that the allegations underlying Ms. Ojeda Montoya's state criminal case are serious, that in and of itself does not implicate the Laken Riley Act. The Leominster District Court already determined that she is entitled to release on her own recognizance.[6] *See* ECF No. 6-1 at 3. Moreover, she has a young daughter at home whom she needs to breastfeed and a husband who recently suffered an acute medical episode, seemingly as a result of ICE agents' actions. Those factors alone weigh in favor of a finding of extraordinary circumstances.

"Exceptional circumstances are those 'that make the grant of bail necessary to make the habeas remedy effective.'" *Jimenez*, 2025 WL 2639390, at *1 (quoting *Mapp*, 241 F.3d at 230). Here, Petitioner asserts that her detention is wrongful because DHS has applied the wrong statutes to her case, which strips her of her right to be heard on the pivotal issue of her liberty. If the Court were to decline to release her pending adjudication of her habeas petition and she were to ultimately prevail on the petition, her requested remedy would have been rendered ineffective because it would have failed to prevent her unconstitutional detention. *See, e.g.*, *Jorge M.F. v. Jennings*, 534 F. Supp. 3d 1050, 1055 (N.D. Cal. 2021) ("[I]f Petitioner is detained, he will already have suffered the injury he is now seeking to avoid."). "Petitioner's interest can only be vindicated if, assuming she is correct that Section 1226(a) applies to her immigration status, she receives an individualized assessment of her risk of flight and dangerousness *before* she is deprived

---

[6] Prior to appearing in criminal court, Ms. Ojeda Montoya reported to the Leominster police department voluntarily and admitted to the alleged conduct, which is another indication that she is not a flight risk. *See* ECF No. 8-4 at 6–7.

of liberty." *Salgado v. Francis*, No. 25-CV-6524, 2025 WL 2806757, at *8 (S.D.N.Y. Oct. 1, 2025) (emphasis in original). Therefore, the Court determines that Ms. Ojeda Montoya's release is necessary to make her requested habeas remedy effective.

For the foregoing reasons, I **ORDER** Petitioner immediately released subject to any conditions of release imposed by the state district court in her pending criminal case and any conditions that may be in place from her initial release on bond in 2023. The parties are **ORDERED** to file additional briefing with the Court by November 14, 2025, on the question of the applicability of the Laken Riley Act to Petitioner's case. Any responses will be due on or before November 18, 2025.

**SO ORDERED.**

Dated this 10th day of November, 2025.

/s/ Stacey D. Neumann
**UNITED STATES DISTRICT JUDGE**
