UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | | |
|---|---|---|
| JULIANA MILENA OJEDA MONTOYA, | ) ) ) | |
| Petitioner, | ) ) | |
| v. | ) ) | 2:25-cv-00558-SDN |
| KEVIN JOYCE, *Sheriff, Cumberland County Sheriff's Office*, et al., | ) ) ) ) ) | |
| Respondents. | ) | |

**ORDER GRANTING MOTION FOR ATTORNEY'S FEES AND EXPENSES**

On November 7, 2025, Petitioner Juliana Milena Ojeda Montoya filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241, alleging Respondents unlawfully re-detained her under 8 U.S.C. § 1225(b)(2) when they should have detained her, if at all, only discretionarily under 8 U.S.C. § 1226(a). *See* ECF No. 6-1 at 5. The Court granted her petition on November 17, 2025, holding section 1226(a) governs her situation as a noncitizen who has resided continuously in the United States for more than two years, which rendered her re-detention unlawful from the outset.[1] ECF No. 17 at 4. Ms. Ojeda Montoya now timely moves for an award of attorney's fees and costs in the amount of $10,487.56[2] under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412. ECF No. 22.

---

[1] Although the parties initially contested the applicability of the Laken Riley Act to Ms. Ojeda Montoya's case, the Government conceded she was not subject to mandatory detention under 8 U.S.C. § 1226(c)(1)(E)(ii). *See* ECF No. 15 at 2.

[2] Petitioner originally sought $9,735.61 for litigating the underlying habeas petition, but her reply increased that request to $10,487.56 to cover the costs of litigating the instant fees motion. *See* ECF No. 30 at 7.

**ANALYSIS**

The EAJA requires a court to award fees, costs, and other expenses to the prevailing party in a civil action against the United States "unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A). The "position of the United States" covers both the underlying agency action and the United States' litigation position. *Id*. § 2412(d)(2)(D). To recover fees, a party must show (1) the petitioner prevailed in the civil case; (2) the petition was filed on time; (3) the Government's position was not substantially justified; and (4) no special circumstances exist that would make awarding fees against the Government unjust. *Castañeda-Castillo v. Holder*, 723 F.3d 48, 57 (1st Cir. 2013). Neither party disputes the first two factors are satisfied.[3] *See* ECF No. 22 at 1–4; ECF No. 30 at 7; *see generally* ECF No. 29. Respondents nonetheless resist the award of fees on two fronts. First, they argue the EAJA does not waive the Government's sovereign immunity for fee awards in immigration habeas petitions—a position that runs headlong into this Court's own, repeated, precedent holding the opposite. Second, they argue that even if the EAJA applies, their litigation position to re-detain Ms. Ojeda Montoya was substantially justified.

## I.   EAJA

The threshold issue is whether the District Court possesses subject matter jurisdiction to award attorney's fees under the EAJA for a habeas corpus petition arising

---

[3] A fee petition is timely if filed within thirty days after the deadline to appeal the final judgment expires. *See* 28 U.S.C. § 2412(d)(1)(B) (EAJA requires fee application be filed within 30 days of "final judgment"); *id.* § 2412(d)(2)(G) ("final judgment" means "a judgment that is final and not appealable"); Fed. R. App. P. 4(a)(1)(B) (party has 60 days after judgment is entered by the district court to file an appeal); *Pierce v. Barnhart*, 440 F.3d 657, 661 (5th Cir. 2006) ("[T]he thirty-day EAJA clock 'begins to run after the time to appeal that final judgment has expired.'" (quoting *Melkonyan v. Sullivan*, 501 U.S. 89, 96 (1991)).

from civil immigration detention. The EAJA provides in relevant part: "a court shall award to a prevailing party other than the United States fees and other expenses . . . incurred by that party in any civil action (other than cases sounding in tort)." 28 U.S.C. § 2412(d)(1)(A). The dispositive question is whether Petitioner's challenge to her immigration detention pursuant to 28 U.S.C. § 2241 constitutes a "civil action" under the EAJA.

Two courts in this District have already fulsomely considered and rejected Respondents' core argument that habeas challenges to civil immigration detention fall outside of the EAJA's definition of "civil action." *See Bernardo-Rodrigues v. Hyde*, No. 25-CV-00553, 2026 WL 370863, at *2 (D. Me. Feb. 10, 2026); *Pérez Piña v. Stamper*, Dkt. No. 25-CV-00509, ECF No. 34, at *6 (D. Me. May 20, 2026). The reasoning bears repeating. The EAJA's text sweeps broadly, covering "*any* civil action (other than cases sounding in tort)." 28 U.S.C. § 2412(d)(1)(A) (emphasis added). Respondents themselves concede as much, quoting the Supreme Court's own observation that "habeas corpus is technically 'civil.'" ECF No. 29 at 5 (quoting *Schlanger v. Seamans*, 401 U.S. 487, 490 n.4 (1971)). The statute's use of the word "any" does the rest of the work: once a habeas action qualifies as civil in nature, even partially, the EAJA covers it. Every district court in this Circuit to address the question has reached the same conclusion. *See, e.g.*, *Ndongala v. Wesling*, No. 26-cv-10194, 2026 WL 1534981, at *1 (D. Mass. June 1, 2026) ("[H]abeas petitions are civil actions within the meaning of the EAJA."); *Peruano v. Wesling*, No. CV 26-10300, ___ F. Supp. 3d ___, 2026 WL 1413758, at *12 (D. Mass. May 20, 2026) ("[I]t is well settled that habeas corpus is a civil proceeding," such that "the EAJA unambiguously applies to habeas challenges to immigration detention." (quotation modified)); *Orrego Orrego v. Hyde*, No. CV 26-10260, 2026 WL 1480362, at *2 (D. Mass. May 27, 2026)

3

(concluding "habeas actions are civil actions for the purposes of EAJA"); *Nguyen v. Lyons*, No. CV 25-631, 2026 WL 2137874, at *2 (D.R.I. July 24, 2026) ("[A] habeas proceeding is a civil action for purposes of EAJA fees and costs."); *Bernardo-Rodrigues*, 2026 WL 370863, at *1.

Respondents ask the Court to revisit that conclusion, arguing the better reading of the EAJA's text treats habeas actions challenging civil immigration detention as "hybrid" in nature. ECF No. 29 at 14. The Court remains unpersuaded, at least where the detention stems from civil immigration detention, rather than criminal proceedings. *Cf. O'Brien v. Moore*, 395 F.3d 499, 505 (4th Cir. 2005) ("[T]o the extent that a habeas proceeding reviews a criminal punishment with the potential of overturning it, the habeas proceeding necessarily assumes part of the underlying case's criminal nature . . . ."). And even granting Respondents' framing, a "hybrid" proceeding still qualifies as civil to fall within the EAJA's use of "any"; nothing in the statute's text demands an action be "*purely* a civil action" in order to qualify. ECF No. 29 at 9 (quoting *Barco v. Witte*, 65 F.4th 782, 785 (5th Cir. 2023)) (emphasis added).

To the extent Respondents lean on *Barco*, 65 F.4th 782, and *Obando-Segura v. Garland*, 999 F.3d 190 (4th Cir. 2021), the Court has already explained why those cases are unpersuasive. *See Pérez Piña*, ECF No. 34, at *5–6. A civil immigration habeas petition exists to protect individual liberty and redress unlawful detention. Because Ms. Ojeda Montoya's detention arose from a civil immigration process, her challenge to it is likewise an adversarial civil proceeding. *See Ryan v. U.S. Immigr. & Customs Enf't*, 974 F.3d 9, 25 (1st Cir. 2020) ("[I]mmigration arrests are undeniably civil in nature."); *Bernardo-Rodrigues*, 2026 WL 370863, at *1 ("Through a civil habeas petition, an individual in custody on civil process challenges the lawfulness of their detention through

4

an adversarial civil proceeding."). *Barco* and *Obando-Segura* fail to grapple with this distinction. *See Pérez Piña*, ECF No. 34, at *6.

In sum, EAJA's text unambiguously classifies Ms. Ojeda Montoya's habeas petition as a "civil action" such that the statute's waiver of sovereign immunity reaches Respondents for the purpose of awarding attorney's fees. The Court thus retains jurisdiction over the motion.

## II.   Substantially Justified

Respondents' second objection contends their litigation position—that Ms. Ojeda Montoya faced mandatory re-detention without a bond hearing under section 1225(b)—was substantially justified. The Government bears the burden of proving substantial justification by a preponderance of the evidence. *Saysana v. Gillen*, 614 F.3d 1, 5 (1st Cir. 2010). To be "substantially justified," the Government's position need not be "justified to a high degree," rather, it suffices if it is "justified in substance or in the main." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

The Court sets out the facts here because they inform, and ultimately undercut, Respondents' claim of substantial justification.[4] Ms. Ojeda Montoya entered the country uninspected on February 22, 2023. ECF No. 1-1 at 1. Within a day, the U.S. Department of Homeland Security ("DHS") apprehended her and placed her into removal proceedings, ECF No. 8-1 at 1, classifying her as "a[] [noncitizen] present in the United States who has not been admitted or paroled" under section 236 of the Immigration and

---

[4] The Court's earlier order granting Petitioner's release recounts the factual circumstances in greater detail. *See Ojeda Montoya v. Joyce*, Dkt. No. 25-cv-00558, ECF No. 14, at *1–4 (D. Me. Nov. 10, 2025).

Nationality Act, 8 U.S.C. § 1226.[5] ECF No. 1-1 at 1. The Immigration Court subsequently held a bond hearing and released her on $1,500 bond and subject to conditions of release. ECF No. 1-3 at 1.

On August 1, 2025, Massachusetts filed a criminal complaint against Ms. Ojeda Montoya. ECF No. 8-4 at 5. On November 6, 2025, U.S. Immigration and Customs Enforcement ("ICE") agents pulled over her car, which her husband was driving. ECF No. 6-1 at 3. A bystander captured the scene on video: an ICE agent attempting to pry Ms. Ojeda Montoya's young daughter from her husband's arms while he suffered an apparent seizure. *See id.* at 4. Agents then re-detained Ms. Ojeda Montoya and placed her into ICE custody, *id.*, where she remained until this Court ordered her release on November 10, 2026, ECF No. 14. Before her arrest, Ms. Ojeda Montoya lawfully resided in the interior of the country under conditional release and held a valid work authorization document that permitted her to maintain gainful employment at Burger King. ECF No. 1-5 at 1; ECF No. 6-1 at 3. Ms. Ojeda Montoya challenged her re-detention in the habeas petition filed on November 7, 2025, ECF No. 1, and the Court granted that petition on November 17, 2025, holding section 1226(a)'s discretionary detention scheme governed her case, ECF No. 17.

Respondents now argue that re-detaining Ms. Ojeda Montoya without notice or an opportunity to be heard was substantially justified. This Court already rejected that same defense in *Pérez Piña*, where Respondents raised an identical substantially-justified

---

[5] Under section 1226, a noncitizen who is "arrested and detained" faces three potential outcomes during the pendency of their removal proceedings: the Attorney General "may continue to detain the arrested [noncitizen]"; "may release the [noncitizen] on bond of at least $1,500"; or "may release the [noncitizen] on conditional parole." 8 U.S.C. § 1226(a). It therefore "establishes a discretionary detention framework for noncitizens." *Gomes v. Hyde*, No. 25-CV-11571, 2025 WL 1869299, at *1 (D. Mass. July 7, 2025).

argument in response to a fees motion. *See Pérez Piña*, ECF No. 34, at \*6–11. Their continued reliance on the Board of Immigration Appeals' decision in *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (B.I.A. Sept. 5, 2025), provides no refuge for their decision to re-detain Petitioner for the reasons this Court has already stated. *See Pérez Piña*, ECF No. 34, at \*9–10.

More importantly, at the time of Petitioner's re-detention, Respondents were bound by—and continue to be beholden to—Supreme Court and First Circuit precedent that conclusively foreclosed their attempts to re-detain Petitioner without due process, regardless of the statutory construction of the text of sections 1225 and 1226. Because DHS had already initially detained and released Ms. Ojeda Montoya on conditional release in March 2025, ICE's regulations on revocation of conditional release governed the decision to re-detain her in November 2025. *See* 8 C.F.R. § 241.13(i)(2); *Kong v. United States*, 62 F.4th 608, 619–20 (1st Cir. 2023) (section 241.13(i)(2) requires "(1) an individualized determination (2) by ICE that, (3) based on changed circumstances, (4) removal has become significantly likely in the reasonably foreseeable future"). *Kong*, decided in 2023, sits squarely on point and should have guided Respondents' conduct: before re-detaining her, Ms. Ojeda Montoya was entitled to an individualized determination to revoke conditional release that required consideration "*prior* to re-detention." *Huynh v. Wesling*, No. 25-CV-13794, 2026 WL 183467, at \*3 (D. Mass. Jan. 23, 2026) (emphasis added) (collecting cases). ICE failed to follow its own regulations—regulations designed precisely to protect noncitizens' due process rights.

Respondents assert "there was no appellate guidance whatsoever" on the issue of detention. ECF No. 29 at 14. But that claim ignores *Kong* and decades of Supreme Court and First Circuit precedent, unequivocally guaranteeing noncitizens due process in

immigration proceedings. *See, e.g.*, *Yamataya v. Fisher*, 189 U.S. 86, 101 (1903) ("But this [Supreme] [C]ourt has never held, nor must we now be understood as holding, that administrative officers, when executing the provisions of a statute involving the liberty of persons, may disregard the fundamental principles that inhere in 'due process of law' as understood at the time of the adoption of the Constitution. One of these principles is that no person shall be deprived of his liberty without opportunity, at some time, to be heard . . . ."); *Pérez Piña*, ECF No. 34, at *8. To the extent Respondents take umbrage with the application of *Hernandez-Lara v. Lyons*, 10 F.4th 19 (1st Cir. 2021), to this case because it does not explicitly address the statutory construction of sections 1225 and 1226, the Court reiterates that *Hernandez-Lara* stands for the simple proposition that due process applies in immigration detention cases. *See Pérez Piña*, ECF No. 34, at *10–11; *Bernardo-Rodrigues*, 2026 WL 370863, at *3 ("[T]he preexisting law in this Circuit required Respondents to afford a noncitizen like Petitioner access to a discretionary detention regime *on due process grounds*." (emphasis in original)). Respondents point to no evidence in the record that they supplied Ms. Ojeda Montoya the process she was due. Their litigation position was not substantially justified then, and it is not now.

## CONCLUSION

Accordingly, the Court **GRANTS** Petitioner's motion for attorney's fees and costs. ECF No. 22. Pursuant to the Court's authority under the EAJA, 28 U.S.C. § 2412(d)(1)(A), the Court **ORDERS** the United States to pay attorney's fees in the amount of $10,487.56, in full satisfaction of any and all attorney's fees and expenses under the EAJA in this action.

**SO ORDERED.**

Dated this 4th day of August, 2026.

/s/ Stacey D. Neumann
**UNITED STATES DISTRICT JUDGE**